UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAVIER ALCALA,

    Plaintiff,

    v.

MONSANTO COMPANY,

    Defendant.

_____/

No. C 08-4828 PJH

**ORDER GRANTING SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing on April 21, 2010 before this court. Plaintiff Javier Alcala ("plaintiff" or "Alcala") appeared in pro per. Defendant Monsanto Company ("defendant" or "Monsanto") appeared through its counsel, Daniel Blakey. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendant's motion for summary judgment, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This is a personal injury action, stemming from plaintiff's alleged exposure to certain of Monsanto's pesticide products, known as "Roundup" herbicides. See generally Complaint.

A.    Background Facts

Plaintiff worked for Caltrans as a spray truck operator from 2000 to 2006. Part of plaintiff's responsibilities included the application of pesticide products while seated in the cab of his spray truck. By plaintiff's own admission, he applied at least 13 different pesticides, with Monsanto's Roundup products allegedly constituting more than 50% of the products used.

In 2003, plaintiff was diagnosed with asthma after failing his annual Caltrans respirator test. He began to feel fatigue. Starting in January 2006, plaintiff began to experience headaches after working in the Caltrans warehouse, and plaintiff complained to his supervisors that he was experiencing these headaches due to working in the warehouse. On September 8, 2006, plaintiff sought medical treatment for his physical symptoms. He complained of his respiratory problems, and the loss of a sense of smell. On September 12, 2006, plaintiff went to Kaiser and saw a Dr. Peck, who indicated that plaintiff could be experiencing occupation-related chemical exposure.

In November 2006, plaintiff complained to the San Mateo County Agricultural commissioner about the filtering equipment on his spray track, and also about the labeling on various pesticide manufacturers' labels. After investigating the complaints, the Commissioner determined them to be without merit.

Subsequently, plaintiff visited numerous doctors for his condition, up through 2008.

B.  Procedural History

Plaintiff filed a generic form complaint in San Mateo County Superior Court on September 11, 2008. See generally Complaint. The complaint alleges two causes of action against Monsanto: (1) general negligence; and (2) products liability. Id. Monsanto removed the action to federal court on October 20, 2008, alleging diversity jurisdiction.

Monsanto now moves for summary judgment with respect to plaintiff's complaint.

**DISCUSSION**

A.  Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

Case 4:08-cv-04828-PJH   Document 43   Filed 04/26/10   Page 3 of 9

verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Legal Analysis

Defendant's motion raises two straightforward issues for resolution: (1) whether plaintiff's claims fail because they are time-barred under the applicable statute of limitations; and (2) whether plaintiff's claims fail because the undisputed facts demonstrate a lack of any causal connection between defendant's product, and plaintiff's injuries.

1.   Statute of Limitations

Defendant contends that plaintiff's claims here are barred, because they were filed on September 11, 2008 – more than two years after the latest possible accrual date for plaintiff's injury, which defendant asserts was September 8, 2006, the date on which plaintiff sought medical treatment for certain respiratory issues and loss of sense of smell, after a long history of symptoms. See, e.g., O'Brien Decl., Ex. F at 19:18-25, 27:4-7. Plaintiff, however, contends that the statute of limitations began running as of September 12, 2006, because that is the date that a doctor for the first time "confirmed" that his injuries could be job-related. See Alcala Decl., Ex. P at 442:11-20; Alcala Decl., Ex. O (doctor's statement noting plaintiff's symptoms could be caused by "occupational chemical exposure").

Under California Code of Civil Procedure § 335.1, an "action for . . . injury to . . . an individual caused by the wrongful act or neglect of another" must be commenced within a two-year period.[1] A limitations period begins to run when the claim "accrues," or when the cause of action is "complete with all of its elements." Norgart v. Upjohn Co., 21 Cal. 4th

---

[1] Before January 1, 2003, actions for personal injury caused by a product, whether based on negligence or on a theory of products liability, was subject to a one- year statute of limitations. See former Code of Civil Procedure §§ 312, 340(3); Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999). Effective January 1, 2003, the limitations period was extended to two years.

383, 398 (1999).  However, California law also provides that the "discovery rule" can postpone accrual of a cause of action until the plaintiff either discovers the injury or has reason to discover it.  Id.  A plaintiff has "reason to discover" a cause of action whenever he/she "has reason at least to suspect a factual basis for its elements."  Id.

The California Supreme Court has explained that in discussing the discovery rule in terms of a plaintiff's suspicion of the "elements" of a cause of action, it was referring to the "generic" elements of wrongdoing, causation, and harm.  Fox v. Ethicon Endo-Surgery, Inc., 34 Cal. 4th 797, 807 (2005).  In other words, the court looks not at whether the plaintiff pleads facts supporting each specific element of a particular cause of action, but rather at whether the plaintiff "ha[s] reason to at least suspect that a type of wrongdoing has injured [her]."  Id.  "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period."  Id. at 806-07.

Thus, under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.  Id. at 803.  In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis.  Id.

Here, defendant has correctly pointed out that, to the extent plaintiff presented to his physician on September 12, 2006 with certain symptoms and then had those symptoms connected to his occupational environment, plaintiff had all those same symptoms as early as September 8, 2006.  This is undisputed.  See Alcala Decl., Ex. P at 443:11-444:11.  However, plaintiff testified in his deposition that, while he did experience many symptoms beginning in 2003 and continuing through to September 2006 and subsequently, he simply did not make a connection between those symptoms and his exposure to pesticides until his Kaiser doctor suggested it on September 12.  See O'Brien Decl., Ex. E at 142:14-

4

143:10. The court concludes that it would be inappropriate to charge plaintiff with reasonable suspicion of his injury and the role of defendant's Roundup products in causing his injury, based on physical symptoms he experienced, without knowledge that the symptoms themselves *could* be connected to his exposure to pesticides specifically.

Defendant, moreover, has presented no evidence that plaintiff acquired any knowledge of the link between his somewhat ambiguous physical symptoms (e.g., asthma, loss of sense of smell, fatigue, headaches), and his exposure to defendant's product or pesticides specifically, prior to September 12, 2006. Defendant attempts to prove that plaintiff previously knew about the link between his symptoms and his pesticide use by noting that plaintiff connected headaches he was experiencing in January 2006 to his use of pesticides in defendant's warehouse. But this is a mischaracterization of plaintiff's testimony. Rather, plaintiff testified that he noticed his headaches were getting worse while working at the warehouse and complained to his supervisors in early 2006 about it. Critically, however, plaintiff complained about the lack of ventilation causing his headaches, and not the use of pesticides specifically. See O'Brien Decl., Ex. E at 109:9-111:9.

All of which demonstrates that, while undisputed that plaintiff began to experience symptoms well in advance of September 12, 2006, insufficient evidence conclusively suggests that plaintiff should have been aware before September 12, 2006, that those symptoms were being caused by his exposure to his work-related use of pesticides generally, or use of defendant's product specifically. As such, the court construes the accrual date for plaintiff's claims as September 12, 2006. Defendant's motion for summary judgment on grounds that plaintiff's claims are time-barred is therefore DENIED.

2. Causation

Plaintiff has alleged two claims in his form complaint: negligence and products liability. See generally Complaint. At the hearing on the motion, plaintiff further clarified that the specific type of products liability claim he is pursuing is one alleging the existence of "warning defects" in defendant's Roundup products. See, e.g., Taylor v. Elliott

5

1  Turbomachinery Co., Inc., 171 Cal. App. 4th 564, 577 (2009)(strict products liability under
2  California law invoked for three types of product defects: manufacturing defects, design
3  defects, and warning defects).  Both the negligence and failure to warn claim require a
4  showing by plaintiff that his alleged injuries were in fact caused by defendant's product.
5  See, e.g., Nelson v. Superior Court, 144 Cal. App. 4th 689, 687 (2006)(the "elements of a
6  strict products liability cause of action are a defect in the manufacture or design of the
7  product or a failure to warn, causation, and injury"); see also Walton v. The William Powell
8  Co., --- Cal. Rptr. 3d ----, 2010 WL 1612209 (April 22, 2010)("[U]nder either a negligence or
9  a strict liability theory of products liability, to recover from a manufacturer, a plaintiff must
10 prove that a defect caused injury").  Defendant here argues, however, that there is no
11 evidence that can satisfy this requirement.

12      As a preliminary matter, defendant objects to a large portion of plaintiff's declaration
13 and its accompanying exhibits on numerous grounds, including irrelevance, lack of
14 personal knowledge, lack of authentication, inadmissible hearsay, and improper lay/expert
15 opinion.  Defendant's objections are generally well-taken, and much of plaintiff's evidence is
16 inadmissible as currently presented.

17      In view of plaintiff's pro per status however, it is worth noting that, even looking to the
18 facts submitted by plaintiff himself in the most favorable light, plaintiff has failed to submit
19 any evidence establishing a link between his injuries, and defendant's product.  Crediting
20 plaintiff's strongest evidence, he submits several purportedly key documents.  On
21 September 12, 2006, for example, plaintiff reported to a doctor at Kaiser that he had
22 asthma, and that he believed that asthma started when he began his chemical spraying job
23 for Cal Trans.  See Alcala Decl., Ex. O.  In the report of that meeting, the attending doctor
24 reports that plaintiff's symptoms – specifically, his reported asthma and decreased sense of
25 smell – may be related to his "occupational chemical exposure."  See id.  Next, plaintiff
26 submits an evaluation from UCSF medical center dated January 28, 2008, in which a Dr.
27 Harrison states that "on review of [plaintiff's] history and medical records,[plaintiff's]
28

exposure to pesticides while working for Cal Trans resulted in central nervous system symptoms (headache) as well as respiratory irritation." Alcala Decl., Ex. I. There is also a Pesticide Illness Report filed by a Dr. Michael O'Malley, which was completed on December 5, 2006. Alcala Decl., Ex. M. It states that plaintiff's date of injury and illness was September 8, 2006, and that the dates of exposure were September 8 through November 2006. The report states that the "diagnosis" is herbicide exposure. Id. Finally, plaintiff also reports that, even as late as April 29, 2008, he was still reporting – this time, to a Dr. Christina Wang at Kaiser – certain pesticide-related symptoms. See Alcala Decl., Ex. U.

Critically, however, while these documents establish a link between plaintiff's symptoms and his exposure to pesticides, *none of them* states which particular herbicide caused any exposure, let alone do they reference defendant's product, Roundup. Similarly, to the extent plaintiff submits records of allergy tests, and the results from visits to doctors, these reports all demonstrate the nature of symptoms that plaintiff was both reporting and actually experiencing (e.g., asthma, respiratory problems), without ever going so far as to reference or state, let alone demonstrate, a connection between plaintiff's symptoms, and defendant's pesticide specifically. See, e.g., Alcala Decl., Ex. L (Sequoia Occupation Health "Flow Sheet").

Plaintiff's own submission of his deposition testimony in this case underscores the lack of any causal connection. Plaintiff's deposition testimony expressly states that, even when he confirmed with a doctor for the first time on September 12, 2006 that his injuries could be job related, he only ever confirmed that pesticides in general – not Roundup or any other pesticide specifically – could be causing his symptoms. See Alcala Decl., P at 442:25-443:10.

Indeed, at least one of the progress notes that plaintiff submits, which was purportedly issued by the Sequoia Occupational Clinic, even goes so far as to state that as of October 16, 2006, Dr. Heinrich found plaintiff's respiratory problems "not work related."

7

See Alcala Decl., Ex. J.  This document casts doubt on whether plaintiff's injuries were even pesticide-related, let alone related to Roundup specifically.

Even that evidence which *does* mention Roundup is insufficient to fill the causation gap.  Plaintiff submits: a technical fact sheet for Roundup that states that Roundup is an herbicide made up of "Monsanto's glyphosate, a surfactant system and water;" and an "analysis of glyphosate data from the California Environmental Protection Agency," as well as a summary thereon.  See Alcala Decl., Ex. R-T.  The analysis of glyphosate – the active ingredient in Roundup – suggests, however, that while this herbicide is identified "frequently in investigations of pesticide-related illnesses and injuries," only 22 "systemic" cases out of 815 reports were characterized as definitely or probably related to glyphosate exposure alone.  Furthermore, analysis of these cases revealed a limited number of complaints including nausea, headaches, vomiting, diarrhea, among others.  See id.  Moreover, *all* the cases involved "primarily topical exposure," and the symptoms themselves were "not unique to glyphosate exposure, and no consistent pattern of effects or "toxindrome" was apparent at all.  See id.; see also Alcala Decl., Ex. S.

Added to these facts are defendant's submitted facts:  that an investigation by the County Agricultural Commission found no merit to plaintiff's claims regarding the failure of his spray truck to filter the pesticides appropriately, and the various pesticide manufacturers' labeling regarding the various pesticides (re respiratory warnings); and that defendant's experts in environmental and occupational medicine, and board certified medical toxicologist, have testified that the Roundup products used by defendant do not account for plaintiff's symptoms.  See O'Brien Decl., Exs. J-K.

Based on all the foregoing, the court concludes that there is simply no demonstrated link that plaintiff has shown between his physical symptoms and *defendant's product specifically*, even if the court were to conclude that plaintiff were sufficiently able to establish a link between his symptoms and his use of pesticides in general.

In sum, the court therefore GRANTS defendant's motion for summary judgment with

respect to plaintiff's negligence and strict liability claims, on grounds that plaintiff has failed to establish the requisite causation element.

C.     Conclusion

For the foregoing reasons, defendant's motion for summary judgment as to all claims alleged in plaintiff's complaint, is GRANTED.

**IT IS SO ORDERED.**

Dated: April 26, 2010

PHYLLIS J. HAMILTON
United States District Judge