United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER ALCALA, | No. C-08-04828 PJH (DMR) |
| Plaintiff, | **ORDER ON JOINT DISCOVERY LETTER [DOCKET NO. 80]** |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

On March 7, 2014, *pro se* Plaintiff Javier Alcala and Defendant Monsanto Company ("Monsanto") filed a joint discovery letter brief in which Alcala seeks an order compelling Monsanto to provide further responses to his first set of requests for production (RFPs). [Docket No. 80 (Joint Letter).] The court conducted a hearing on the matter on March 20, 2014. For the following reasons and for the reasons stated on the record, the court grants in part and denies in part Alcala's motion to compel.

**I. Background**

This is a personal injury action, stemming from Alcala's alleged exposure to certain of Monsanto's pesticide products, known as "Roundup" herbicides.[1] (*See generally* Am. Compl.)

---

[1] The parties use the terms "pesticides" and "herbicides" interchangeably in their submissions. According to Defendant, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, *et seq*., which regulates the sale, distribution, and use of pesticides in the U.S., treats herbicides as a subset of pesticides.

1   Alcala brings two state law causes of action against Monsanto for general negligence and products
2   liability.  From 2001 to 2006, Alcala worked for Caltrans operating a vehicle which sprayed
3   pesticides.  While in that position, Alcala applied seventeen different pesticides, with three of
4   Monsanto's Roundup products–Roundup Pro, Roundup Pro Concentrate, and Roundup Pro/Dry (the
5   "Roundup products")–allegedly constituting more than 50% of the products he used.  (Am. Compl.
6   2-3.)

7   In 2002 Alcala began suffering from respiratory problems.  His health worsened and in
8   September 2006, his medical providers informed him that his respiratory problems could be job-
9   related.  Alcala's doctors later confirmed that his medical problems were the result of exposure to
10  pesticides; specifically, glyphosate, the active ingredient in Monsanto's Roundup products.  (Am.
11  Compl. 4.)  In his original complaint, Alcala alleged that he suffers from a number of medical
12  problems, including respiratory problems, asthma, nervous system disorders, lost sense of smell,
13  chronic fatigue syndrome, and fibromyalgia.  (Compl. Attach. 1.)  In his Amended Complaint, filed
14  in September 2013, Alcala alleged that four medical conditions are related to his pesticide exposure:
15  "respiratory problems, diarrhea, liver [sic] and gastritis."  However, he alleges that the only ongoing
16  medical issue he has are respiratory problems.  (*See* Am Compl. 4-5 ("[o]f these four medical
17  problems, lately . . . the only one that Plaintiff has kept on having medical problems [] is with the
18  respiratory problems.  And that is why Plaintiff wants to make very clear that the respiratory
19  problems [] is the most important medical problem of this complaint.").)  During his December 2013
20  deposition, Alcala unequivocally confirmed that for purposes of this lawsuit, the only medical
21  condition he claims to have resulted from his exposure to the Roundup products is respiratory
22  problems.[2]  (*See* Joint Letter 3.)

---

[2] The court reviewed a portion of Alcala's deposition testimony, and read it aloud during the hearing.  Alcala confirmed that he had testified under oath at his deposition that he is limiting this lawsuit to complaints about his respiratory problems.  However, Alcala tried to keep the door open by stating that if he retained an expert, and if that expert were able to link his Roundup products exposure to his other medical symptoms, he intended to seek damages for those symptoms in this lawsuit.  Based on the court's review of Alcala's deposition testimony, the court finds that he has narrowed his claims in this lawsuit to respiratory problems only.  Discovery has now closed, as has Alcala's ability to broaden this lawsuit.

2

On November 12, 2013, Alcala served Monsanto with a set of fifteen RFPs. (*See* Joint Letter Ex. A.) Alcala now moves to compel further responses from Monsanto, arguing that its responses are incomplete. Fact discovery closed on February 14, 2014.[3]

## II. Legal Standards

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

## III. Discussion

Alcala asserts that Monsanto's responses to fourteen of his fifteen RFPs are inadequate. Monsanto filed a copy of a February 13, 2014 meet and confer letter that describes in detail the company's positions regarding the disputed RFPs. (Joint Letter Ex. B ("Feb. 13 Letter").) Monsanto also refers the court to an index of the 4,400 pages of documents it has produced in this case, attached to its opposition to Alcala's motion to extend discovery deadlines. [*See* Docket No. 75.] The court will address each category of RFPs in turn.

### A. Requests for Studies (RFPs 2, 3)

Alcala seeks all "studies, experiments and investigations" about symptoms caused by exposure to any Roundup product or any product containing glyphosate by inhalation or by any

---

[3] On January 31, 2014, Alcala moved to extend by 90 days the deadlines for the close of discovery, expert disclosures, and the close of expert discovery, on the grounds that Monsanto had failed to respond to his discovery. [Docket No. 73.] On February 11, 2014, the Honorable Phyllis J. Hamilton, the presiding judge in this matter, denied the motion, but noted that if Alcala believed that Monsanto had not produced all responsive documents, he could file a motion to compel pursuant to Federal Rule of Civil Procedure 37 and Civil Local Rule 37. [Docket No. 76.] The court also noted that Alcala could later seek extensions of the expert discovery deadlines if he prevailed on a motion to compel.

other "route of entry."  Alcala generally argues that all of the documents he seeks in his RFPs are important because they constitute proof that exposure to Monsanto's products by any route of entry can cause injuries.  (Joint Letter 2.)  However, as noted, Alcala has narrowed this action to claims related to his respiratory problems.  Moreover, he testified at his deposition that he believes that he was exposed to the products in question via inhalation while seated inside the cab of spray trucks.  (Joint Letter 3-4; Feb. 13 Letter 2.)  Therefore, documents related to "studies, experiments and investigations" about products, medical conditions, and routes of exposure that are not part of Alcala's claims are not relevant.

At the hearing, Monsanto clarified that there are two kinds of responsive studies related to inhalation and/or the respiratory system and the products at issue: animal toxicology studies and human epidemiology studies.  With respect to the first category, Monsanto represents that it has produced all animal toxicology inhalation studies for the Roundup products' active ingredient, glyphosate, the surfactant, and the three Roundup formulations to which Alcala claims exposure.  Alcala disputes this, contending that Monsanto has produced studies that are missing pages and are incomplete.  As to human epidemiology studies, Monsanto asserts that there is a "huge body of such literature," most of which is publicly available online, and that instead of producing actual epidemiology inhalation studies, it has produced articles reviewing, and therefore citing to and providing an overview of, such studies.

Given the parties' dispute about whether Monsanto has produced all responsive animal toxicology studies, the court orders Monsanto to serve amended responses to RFPs 2 and 3 indicating that it has produced full and complete copies of all responsive animal toxicology inhalation studies within its possession, custody, or control by April 3, 2014.  These responses shall be verified under oath by Monsanto.  With respect to human epidemiology studies, the court orders the following: Alcala shall examine the reviews of studies that Monsanto has produced to identify any individual studies which he believes are relevant to his claims in this action; i.e., inhalation studies related to respiratory problems for the three Roundup products and/or glyphosate.  By March 24, 2014, Alcala shall identify to Monsanto the specific epidemiology studies identified in the reviews that he argues should be produced.  Monsanto shall produce the requested studies to which

4

it does not object by April 3, 2014.  If Monsanto disputes the relevance of any studies identified by Alcala, it shall meet and confer with Alcala.  If disputes remain after meeting and conferring, the parties shall each submit a brief two- to three-page letter to the court setting forth their positions by April 3, 2014.  The court will review the parties' submissions and either issue a ruling or set the matter for a further hearing.

### B.  Requests for Documents Relating to False Advertising Allegations and Alleged "Lying" (RFPs 4, 10, 11, 12)

Alcala seeks documents relating to false advertising allegations against Monsanto in New York regarding its glyphosate products, as well as fines imposed on Monsanto by the U.S. Environmental Protection Agency (EPA) for "lying" about the toxicity of glyphosate, "any of the [R]oundups," or any of Monsanto's products.

Monsanto argues that the advertising in question related to products for home use by consumers, not the "Industrial, Turf, and Ornamental" market products Alcala claims he used, and that Alcala does not claim to have seen or relied on any of the advertising.  With respect to the RFPs regarding Monsanto's "lying," it contends that there are no responsive documents regarding the products at issue in this litigation.  Therefore, Monsanto argues that the requested documents are not relevant to Alcala's claims of negligence and products liability.  (Feb. 13 Letter 2-3.)  The court agrees.  Documents regarding Monsanto's alleged misrepresentations or fines levied in connection with products that Alcala does not allege he used are not relevant to this action.

### C.  Requests Regarding the Cancellation of Roundup Pro/Dry (RFPs 5, 6)

Alcala seeks documents regarding the cancellation of Roundup Pro/Dry, including Monsanto's reasons for cancelling that formulation instead of Roundup Pro or Roundup Pro Concentrate, where all three formulations contain glyphosate.

Monsanto argues that pesticides registered with the EPA may have their registrations "cancelled" for any number of reasons, and once cancelled, a pesticide may not be legally sold.  It argues that the registration for Roundup Pro/Dry was not cancelled, but that the company chose to stop producing it for reasons unrelated to safety concerns.  Instead, Monsanto argues that the company decided to produce a different dry formulation for the market, QuikPro, which also

contains glyphosate. (Feb. 13 Letter 3.) In response, Alcala points out that QuikPro was registered with the EPA eleven years before Roundup Pro/Dry was cancelled, apparently seeking to undermine Monsanto's stated basis for discontinuing the product. (Joint Letter 2.)

Monsanto's arguments appear to be premised on a limited interpretation of the term "cancel"; Monsanto restricts that term to mean cancellation of registrations by the EPA. However, a reasonable reading of the RFPs does not support such a limitation, because RFP 6 seeks documents regarding "why [the] defendant only cancel[led] Roundup Pro/Dry," thus referring to Monsanto's own actions, not the EPA's. Therefore, the term "cancellation" as used in RFPs 5 and 6 encompasses Monsanto's decision to discontinue the product. At the hearing, Monsanto asserted that it discontinued Roundup Pro/Dry for marketing reasons, not due to health or safety concerns. Therefore, although Monsanto possesses documents responsive to these requests, it argues that they are not relevant, and asserts that the production of consumer surveys and other marketing materials would impose an undue burden.

Monsanto shall produce responsive documents only to the extent that they indicate that Monsanto discontinued Roundup Pro/Dry due to health or safety concerns, as those terms are broadly construed. Any such documents must be produced by April 3, 2014.

### D. Request for Product Labels and Material Safety Data Sheets (RFP 7)

Alcala seeks all labels and Material Safety Data Sheets ("MSDS") for the three Roundup products at issue since Monsanto registered them for use in the United States. Alcala contends that in response to this RFP, Monsanto has merely produced duplicates of certain labels in different languages. (Joint Letter 2.) Monsanto does not dispute the relevance of the requested documents, but argues that it has produced "a large volume of labels, Material Safety Data Sheets and product use booklets for all three products." It also states that the labeling history and label images for registered products are available on the EPA's website, and that MSDSs are accessible on Monsanto's website. (Feb. 13 Letter 3.) At the hearing, Monsanto clarified that it has produced labels from 2004 to the present.

The court orders Monsanto to produce all labels for the Roundup products at issue in this case from 1999 (which is two years before Alcala alleges his first exposure to the products), to the present.

### E.     Requests Relating to "Volatility or Drift" (RFPs 8, 9, 15)

Alcala seeks all documents regarding studies or experiments regarding the "volatility or drift" of any of the three Roundup products or glyphosate, and Monsanto's knowledge thereof.

Monsanto does not dispute the relevance of volatility studies regarding the products at issue, but argues that "[v]olatility is a function of product chemistry," and asserts that it has produced numerous documents describing the chemistry of glyphosate and the Roundup products.  (Feb. 13 Letter 3.)  Monsanto represents that it is not aware of any volatility studies or experiments showing respiratory problems resulting from inhalation of the products at issue.  As to drift, Monsanto asserts that issues relating to product drift typically arise in the context of aerial applications of pesticides, which is different than Caltrans's ground application of the products at issue.  (Feb. 13 Letter 3.)  Alcala responds that he seeks documents to prove the volatility of the products and to prove that the products "drift for a lot of distance (and that was the way the Plaintiff was exposed to the Defendant['s] products)."  (Joint Letter 2.)  At the hearing, Alcala stated that the trucks he operated for Caltrans sprayed pesticides from a boom attached to the truck, spraying an area four to five feet wide, approximately three to four feet from the ground.  Alcala also referred to a document he obtained from Monsanto's website referencing a study suggesting that glyphosate can drift significantly during ground applications.

Given Alcala's showing of the existence of at least one study regarding glyphosate drift, Monsanto is ordered to produce all studies of product drift related to ground applications of the Roundup products and/or glyphosate by April 3, 2014.  As to documents related to volatility, Monsanto shall serve amended responses to 8, 9, and 15 confirming that it has produced all volatility studies related to inhalation and/or the respiratory system for the products at issue in its possession, custody, or control, or that no such documents exist.  These amended responses shall be verified under oath by Monsanto.

### F.     Demands for Complaints or Class Actions (RFPs 13, 14)

Finally, Alcala seeks documents regarding complaints or class actions against Monsanto relating to personal injury stemming from exposure to the Roundup products at issue or any products containing glyphosate, as well as complaints or class actions regarding damages suffered due to exposure to any of Monsanto's products.

Monsanto argues that the requests are overbroad and burdensome as they are not limited in time or geography, and are not limited to the products Alcala used or his claimed medical condition. (Feb. 13 Letter 3.) In the parties' meet and confer letter, counsel for Monsanto indicates that he offered to search for lawsuits filed in the U.S. during the last ten years in which an allegation was made concerning a respiratory injury due to Roundup exposure. Monsanto has apparently produced one complaint containing such allegations, as well as summaries of data regarding calls to a poison control center from individuals who used Roundup products and an analysis of data from the California EPA database related to glyphosate exposures. (Feb. 13 Letter 3-4.)

As presently worded, Alcala's requests are overbroad and seek information that is not reasonably calculated to the discovery of admissible evidence. Complaints alleging damages from exposure to products that Alcala used, or to glyphosate, may be relevant to his claims in this action; complaints alleging damages related to products he did *not* use are not relevant. The court orders Monsanto to produce complaints filed in the U.S. since 1999 asserting respiratory injuries due to Roundup and/or glyphosate exposure.

### IV. Conclusion

For the foregoing reasons, Alcala's motion to compel is granted in part and denied in part. Monsanto shall produce amended responses and additional documents by April 3, 2014. Any discovery letter briefs regarding human epidemiology studies of the products at issue must be filed by April 3, 2014.

IT IS SO ORDERED.

Dated: March 24, 2014



_____
DONNA M. RYU
United States Magistrate Judge